IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CLAUDIA ALBA-RAGLIN, ORLANDO GARZA, and MISTY GALINDO, | § § § § § | |
| Plaintiffs, | § | |
| v. | § § | 2:25-CV-001-Z-BR |
| DOUG COLLINS, in his official capacity as UNITED STATES SECRETARY OF VETERANS AFFAIRS, | § § § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO SEVER

Plaintiff Alba-Raglin initiated this action by a Complaint filed January 1, 2025. (ECF 1). On February 18, 2025, before Defendant[1] had appeared, Plaintiffs' counsel filed an Amended Complaint, joining Plaintiffs Garza and Galindo. (ECF 10); *see* FED. R. CIV. P. 15(a)(1)(B) (permitting a pleading to which a responsive pleading is required to be amended once as a matter of course within a limited time). Now before the Court is Defendant's June 13, 2025 Motion to Sever. (ECF 28). Plaintiff opposes the Motion. (ECF 31). After considering the filings by the parties and the applicable law, for the following reasons, Defendant's Motion is GRANTED. The Clerk of Court is DIRECTED to file new actions for Plaintiffs Garza and Galindo in accordance with the procedures set forth on the last page of this Order.

---

[1] Originally, the Secretary of Veterans Affairs, the United States Department of Veterans Affairs, and the Thomas E. Creek VA Medical Center were named as separate Defendants. (ECF 1). On the Defendant's unopposed motion, the undersigned ordered the docket amended to reflect that Doug Collins, Secretary of Veterans Affairs, is the sole proper Defendant. (ECF 30); *see* 42 U.S.C. § 200e-16(c).

## I.     BACKGROUND

Plaintiffs' Amended Complaint asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. (ECF 10 at 6–8). All three Plaintiffs allege discrimination, hostile work environment, and retaliation on the basis of race and ethnicity; Plaintiff Orlando Garza additionally alleges discrimination and retaliation on the basis of sex. (*Id.* at 11–14).

The Court has subject matter jurisdiction in this matter under 28 U.S.C. § 1331 because Plaintiffs have asserted causes of action created by federal law. *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025). The presiding United States District Judge has referred the case to the undersigned United States Magistrate Judge for determination of all non-dispositive motions. (ECF 4); *see* 28 U.S.C. § 636(b)(1)(A) *and* FED. R. CIV. P. 72(a).

## II.     APPLICABLE LAW

Before any plaintiff can have a Title VII claim heard in the courts, they must file a charge with the Equal Employment Opportunity Commission ("EEOC") and attempt to have their claims resolved by an administrative process. 42 U.S.C. § 200e-5(e)–(f); *accord Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337–38 (5th Cir. 2021). Exhausting this administrative process is a prerequisite for filing suit under Title VII; failure to exhaust does not deprive a reviewing court of jurisdiction, but it does provide defendants with an affirmative defense. *Davis v. Fort Bend Cty.*, 893 F.3d 300, 307 (5th Cir. 2018). One extension of the administrative exhaustion requirement is that a plaintiff's Title VII claims must generally arise out of the charges they bring administratively. *Ernst*, 1 F.4th at 337.

Multiple plaintiffs may be joined in one action if they assert claims "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and if "any question of law or fact common to all plaintiffs will arise in the action." FED. R. CIV. P. 20(a)(1)(A)–(B). Courts have discretion to sever claims from a suit, resulting in the creation of

multiple separate and independent actions. *Id.* at 21; *see PNC Bank, N.A. v. 2013 Travis Oak Creek, L.P.*, 136 F.4th 568, 573 (5th Cir. 2025). Finally, courts have the discretion to order separate trials on separate issues or claims within a single action. FED. R. CIV. P. 42(b).

When exercising these discretionary powers, the "impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *Def. Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966)). Courts in the Fifth Circuit typically analyze five factors when determining whether to sever claims under Rule 21;

> (1) whether claims arise out of the same transaction, occurrence, or series of transactions or occurrence[s]; (2) whether the claims present common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Id.* at 431.

The first factor is applied by district courts in the Fifth Circuit using a "logical relationship" test. *Stewart v. Tex. Tech. Univ. Health Scis. Ctr.*, 741 F. Supp. 528, 559–60 (N.D. Tex. 2024) (Hendrix, J.).[2] One example of the kind of logical relationship allowing multiple claims to be heard in a single trial is when "claims center on allegations of [the same wrongful conduct] involving the same *modus operandi* . . . [or] are based on a similar series of transactions that were committed

---

[2] The Fifth Circuit has not definitively ruled on the use of this "logical relationship" test in the context of Rule 21 severance; rather, District Courts adopted the test from the Eighth Circuit's ruling in *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974). *Mosley*, in turn, applied the Supreme Court's reasoning from *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610 (1926) ("'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.") (regarding former Equity Rule 30, which governed mandatory counterclaims). *See, e.g., Hanley v. First Invs. Corp*, 151 F.R.D. 76, 78–80 (E.D. Tex. 1993) (adopting the logical relationship test and citing *Mosley* and *Moore*); *and Palermo v. Letourneau Techs., Inc.*, 542 F. Supp. 2d 499, 516 (S.D. Miss. 2008) (noting in passing that the logical relationship test controls Rule 20 joinder and citing *Mosley* and *Moore*). The Fifth Circuit has approvingly cited *Mosley* in the context of joinder and severance under Rules 20 and 21. *Applewhite v. Reichhold Chems.*, 67 F.3d 571, 574 n.12 (5th Cir. 1995) (also citing *Hanley*).

by the same defendant over a relatively short time span." *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 774 (5th Cir. 2009) (regarding sex discrimination).

Taken together, the first and second factors are those for valid joinder under Rule 20. FED. R. CIV. P. 20(a)(1)(A)–(B). If both are satisfied, the question of whether multiple plaintiffs can proceed together is initially "at the option of the plaintiffs." *Applewhite*, 67 F.3d at 574.[3] However, even when plaintiffs have been properly joined, the "district court has broad discretion to sever parties[.]" *Def. Distributed*, 30 F.4th at 427.

Even at the pretrial stage, joinder of claims in a single action can substantially impact the conduct of litigation in multiple ways. For example, unless parties agree otherwise, neither side in a single action may take more than ten depositions by oral examination or written question, and no deposition may last longer than a single seven-hour day. FED. R. CIV. P. 30(a)(2)(A)(i), 30(d)(1). Similarly, the local civil rules of this Court prohibit any party from filing more than one motion for summary judgment in a single action without first obtaining leave from the presiding judge, and the supporting brief may not exceed fifty pages. N.D. TEX. CIV. R. 56.2(b).

As with the above-mentioned discretion to order separate trials in a single action, courts retain the power to grant relief from many of these impacts. *E.g.*, FED. R. CIV. P. 30(a)(2) (requiring courts to grant leave to take a contested eleventh deposition if consistent with general discovery limitations). The power to grant relief, however, does not completely mitigate the consequences of joinder; by requiring parties and the court to go through formal processes of conference, stipulation or objection, motion, and adjudication, joinder of claims in a single action may increase expenses for all involved.

---

[3] Full citation *supra* n.2.

### III. ANALYSIS

Defendant argues that Plaintiffs were improperly joined and that the first four severance factors weigh in favor of severing this lawsuit into three separate actions. (ECF 28 at 13–18). Plaintiffs respond that, particularly at the current stage of proceedings, all five factors weigh against severance. (ECF 31 at 5–8). For the following reasons, the undersigned finds that Plaintiffs were properly joined, but that considerations of judicial economy and fairness weigh in favor of discretionary severance by the Court.

#### A. Plaintiffs Are Properly Joined

Plaintiffs' Amended Complaint sets forth some of the occurrences out of which their claims arise. (ECF 10 at 3–10). Defendant, focusing on the facts alleged by each Plaintiff in their respective administrative proceedings, highlights that most of these occurrences apply to only one Plaintiff. (ECF 28 at 14–15; ECF 32 at 3–5). For example, when considering Alba-Raglin's administrative complaint, the EEOC investigated, among other events, the allegation that another employee threw a metal chart at her on October 23, 2023. (ECF 29-1 at 7).[4] Neither of the other Plaintiffs was involved in that incident. (*See* ECF 28 at 12). Emphasizing that each Plaintiff's claims in this lawsuit are limited to matters that have been administratively exhausted for that Plaintiff, Defendant argues that the disjunction between these events precludes a finding that Plaintiffs' claims arise out of the same transaction or occurrence. (*Id.* at 13–14).

Plaintiffs respond that their claims are logically related, "despite having claims based around individualized facts and legal theories[,]" because they arise from the behavior of the same

---

[4] The Court notes Plaintiffs' objection that the administrative record documents attached by Defendant to its Motion were filed with the Court before discovery had advanced far enough for Plaintiff to verify their authenticity. (ECF 31). This Order refers to Defendant's Appendix only to locate examples of factual allegations illustrating issues the Court resolves in Plaintiffs' favor; nothing in this Order should be construed as any finding of fact. To the extent any factual determination has been relevant to this Order, the Court has relied on the allegations in Plaintiffs' Amended Complaint.

alleged bad actors and there is substantial overlap in identified witnesses. (ECF 31 at 6–7). "Plaintiffs alleged the involvement of common actors who played a role in the discriminatory events." (*Id.* at 7).

The Court agrees with Plaintiffs; their claims arise out of the same series of occurrences, such that the first joinder/severance factor would not prohibit the Court from hearing all of their claims in a single action. Plaintiffs were all employees at the same government facility who allege prohibited actions within the same period of time and often in connection with the same alleged bad actors. (*See* ECF 28 at 14).

Defendant expresses concern that this reasoning renders the "same transaction or occurrence" prong meaningless, and would allow "multiple plaintiffs alleging discrimination [to] file one lawsuit if all plaintiffs share one protected characteristic (regardless [of] whether that characteristic forms the basis of that plaintiff's claim) and their claims share a 'common theme' of harassment and discrimination under any legal theory." (ECF 32 at 3–4). The undersigned disagrees. Excepting Garza's sex discrimination claims, their shared protected characteristic (being Hispanic) does form the basis of claims by each Plaintiff. (ECF 10 at 11–14). More importantly, their claims accuse largely overlapping employees of a single Defendant of doing similar things over the same period of time. In other words, they are claims "with respect to or arising out of the same . . . series of . . . occurrences." *See* FED. R. CIV. P. 20(a)(1)(A).

This conclusion is in keeping with joinder decisions in comparable cases.[5] For example, in *Doe v. Tex. Christian Univ.*, another judge in this district allowed two Jane Doe plaintiffs to join

---

[5] Most joinder jurisprudence in discrimination cases involves allegations of a pattern, practice, or policy of the defendant. *See, e.g.*, *Acevedo v. Allsup's Convenience Stores*, 600 F.3d 516, 521–22 (5th Cir. 2010) (citing an argument by the parties that in turn relied on cases from the Eighth and Eleventh Circuits). As Defendant correctly points out, Plaintiffs have not asserted such a legal theory in this case. (*See* ECF 32 at 4 n.3). Nevertheless, this does not preclude a finding that the discrete discriminatory actions alleged by Plaintiffs have the kind of logical relationship that would make them part of the same series of occurrences under the rules for permissive joinder.

with three others in a discrimination suit despite the factual differences that they were "graduate students, not undergraduate students, and that their allegations involve[d] a slightly different time period[.]" No. 3:20-cv-106, 2021 U.S. Dist. LEXIS 271991, *3 (N.D. Tex. Jan. 12, 2021) (Lynn, J.). The logical connection between their claims was sufficiently established because all plaintiffs "allege[d] that they were discriminated against while they were students at TCU, and that TCU did not adequately address their complaints of discrimination." *Id.* In this case, similarly, each Plaintiff alleges that they were discriminated against while working at the same veteran's hospital in the same time frame, and each had their complaints denied by the same internal administrative office.

For similar reasons, at least one "question of law or fact common to all plaintiffs will arise in" litigating these Plaintiffs' claims. *See id.* at 20(a)(1)(B). For example, all three Plaintiffs complain that alleged harassment by Christina Fleeman, the supervisor over both Alba-Raglin and Garza, contributed to a hostile work environment. (ECF 10 at 12–13). There may even be common questions of fact concerning a single event; for example, Alba-Raglin and Garza both complained in their administrative proceedings that on October 24, 2023, Fleeman took action to prevent them from receiving assignments as charge nurse. (ECF 29-1 at 7, 27). The case will also likely involve at least one question of law common to all Plaintiffs; for example, all three Plaintiffs attempted administrative exhaustion through the same office of the Department of Veterans Affairs, and any legal issues applicable to such attempts in general will be common to all three Plaintiffs. (*See* ECF 10 at 12 (Plaintiff's Amended Complaint, pleading that all three Plaintiffs suffered retaliation after their administrative complaints)).

B.     The Balance of Factors Calls for Severance

That Plaintiffs are properly joined only relates to the first two factors the Court uses to determine whether to grant severance. The other three factors, as described above, are whether judicial economy, avoidance of prejudice, and overlap in evidence favor joinder or severance. For the following reasons, the Court finds all three factors weigh in favor of severance.

Usually, judicial economy favors "entertaining the broadest possible scope of action consistent with fairness to the parties." *Def. Distributed*, 30 F.4th at 427. The circumstances of this case set it apart from that norm. Each Plaintiff is connected with a distinct administrative record, and is limited to pursuing claims that generally arise out of their respective administrative complaints. *Ernst*, 1 F.4th at 337. Defendant argues that Galindo, particularly, joined this suit before exhausting her administrative remedies. (ECF 32 at 8–9). The Court can more efficiently address these matters if the case is severed into three distinct actions.

Severance is also necessary to avoid prejudice to Defendant in this case. If all three cases proceed to trial together, the jury will need an explanation of the differing legal and factual issues relevant to each Plaintiff, and then will need to maintain an understanding of those differences while hearing evidence that may relate only to one or another Plaintiff. (*See id.* at 7 (Defendant's argument to this effect)).

Plaintiffs' response argues that, whatever the situation may be at trial, severance is not necessary to avoid prejudice to Defendant in the current pretrial stage of proceedings. (ECF 31 at 3, 7–8). Severance now, according to Plaintiffs, will instead require parties to "create duplicative production . . . [and] attend separate conferences for motion practice." (*Id.* at 8). Plaintiffs elsewhere point out that, if any discovery issues arise after claims have been severed, "Plaintiffs

would be forced to make three discovery motions, with three responses from Defendant[ ], and three decisions from the Court." (*Id.* at 6–7).

The Court acknowledges that prejudice at trial might still be avoided by denying Defendant's Motion now, but later ordering separate trials for each Plaintiff. *See* FED. R. CIV. P. 42(b). However, the Court declines to base its ruling now on the possibility that it might make a contrary ruling in the future. Moreover, the more immediate possibilities of prejudice identified by Plaintiffs can be similarly avoided by prudent and courteous cooperation amongst the parties, each of whom is represented by competent counsel. *See Dondi Props. Corp. v. Commerce Sav. & Loan Ass'n*, 121 F.R.D. 284, 286–89 (N.D. Tex. 1988) (*en banc* decision of the District Court to establish standards of litigation conduct for attorneys); (*see also* ECF 14 at 3–4) (the undersigned's Standing Order Regarding Potential Discovery Disputes).[6]

Finally, the Court considers "whether different witnesses and documentary proof are required for the separate claims." *Def. Distributed*, 30 F.4th at 431. Plaintiffs point out, correctly, that many of the same witnesses and produced documents will be associated with more than one Plaintiff. (ECF 31 at 5–6, 8). As noted above with respect to prejudice, however, the bearing that each witness and document has on each Plaintiff is likely to differ. Severance of claims in this case will force each party to carefully and proactively identify the connection between a given piece of testimony or evidence and the Plaintiff with which it is associated, safeguarding the efficient and just resolution of this dispute.

---

[6] The duty of lawyers to courteously and professionally cooperate with opposing counsel should also preserve efficiency in the severed actions; Plaintiffs will now be able to depose any single witness up to three times, as necessary, but nothing should prevent the parties from scheduling those depositions to occur at a single time and place and agreeing for a single deposition of a witness to cover topics related to all three cases.

## IV.    CONCLUSION

Accordingly, Defendant's Motion to Sever (ECF 28) is GRANTED. The Clerk of Court is DIRECTED to file two new actions—one for Plaintiff Orlando Garza and one for Plaintiff Misty Galindo—and to transfer all current docket entries from this action into each of the new actions. The deadlines in the Court's current Scheduling Order (ECF 22) will continue to govern all three actions unless and until modified by a future Order in each individual case.

IT IS SO ORDERED.

ENTERED July 30, 2025.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE